(Cuyahoga County Common Pleas, 1901.)

## JAMES W. TUFTS v. GEORGE SCHMUCK

Where a known article, manufactured for a particular purpose, is ordered from the manufacturer, and both he and the purchaser understand that it is to be used for that purpose, there is an implied warranty that it shall be reasonably fit for such purpose.

————

Phillips, J.

Motion for new trial has been argued, and the only ground advanced is, that the court erred in its charge, in stating the law as to the implied warranty relied upon by defendant as to the quality or capacity of the articles that were bought. These were what were called in the case "syphoning bottles."

The part of the charge that is challenged is in these words: "Where an article is purchased for a particular use, and both seller and buyer so understand, the law implies a warranty on the part of the seller that the article is reasonably fit for the particular purpose for which it is sold; that it is free from defects that would render it unfit for such purpose."

It is claimed in argument of the motion that the case, upon the evidence, falls within the rule laid down in the case in 141 United States page 510, third paragraph of the syllabus, which reads: "When a known, described and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular purpose, yet, if the known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." This rule seems to be established; but I do not think this case falls within that rule. I think the Supreme Court, in the opinion, distinguished that rule from the rule that was given the jury in this case. These bottles were not bought by the defendant for a particular use unknown to the seller, but it was understood by both the seller and the purchaser that they were bought for the *very use for which they were manufactured and sold.* I think the evidence was such that the jury was warranted in finding that they would not do the work they were intended by both seller and purchaser to do, the use for which that article is always intended.

In the case in 141 U. S., supra, the thing sold was an ice machine, or refrigerating machine, and was bought for the purpose of reducing the temperature in certain buildings of the purchaser; that was the particular purpose or use

to which he intended to put it. The question in the case was not whether the machine would do the work for which it was intended by its manufacturer, but whether—it not being adequate for the purpose intended by the purchaser—there was an implied warranty accompanying the sale, that it would accomplish that purpose. In the opinion, the court says: "It is not denied that the machine was constructed for refrigerating purposes, and that it worked and operated as a refrigerating machine should; but it is said that it did not so refrigerate as to reduce the temperature of the brewery to 40 degrees Fahrenheit, or to a temperature which would enable defendant to dispense with the purchase of ice.

"The rule invoked ·is, that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it, and for which it is known to be required;" (This is the rule given the jury in this case), "but it is also the rule, as expressed in the text books and sustained by authority, that where a known, described and defined article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

"In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up and put in operation in the brewery. The only implication in regard to it was that it would perform the work the described machine was made to do, and it is not contended that there was any failure in such performance.

"This is not the case of an alleged defect in the process of manufacture known to the vendor, but not to the purchaser, nor of presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own, but of a purchase of a specific article, manufactured for a · particular use, and fit, proper and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed."

That case, it seems to me, is clearly distinguished from this case, and I think it does not sustain the contention of counsel for plaintiff, who cited it.

In the charge, I followed the rule laid down in Parsons on Contracts, and in Benjamin on Sales; and the language in the charge, that I have just read, is substantially the language used by these authorities, and it is substantially the language of our supreme court, in 28 Ohio St., 300, 3rd paragraph of the syllabus, which is: "A party selling articles for a specific purpose, impliedly warrants that they are fit for that purpose, and a failure of such warranty is ground for rescission of a contract based upon it."

The same rule is laid down in 75 Hun., 320, in these words: "It may also be stated as a rule that where a manufacturer contracts to supply an article which he manufactures which is to be applied to a particular purpose, and where the buyer has no knowledge of the article, but necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied. This is the extent to which the authorities go."

So I think, so far as that part of the charge is concerned, it is clearly the law. I think it is clearly authorized by the case in 28 Ohio St., and by the authorities generally; and I think that is the rule, and not the rule contended for by counsel, that should be applied to this case. These bottles were manufactured for the very use that they were to be put to by the purchaser; it is well understood in the trade that they have no other use. The claim was fairly supported by the evidence, that they would not do what they were expected to do, both by the manufacturer and the purchaser.

It is claimed, also, that this is an executed contract, and, therefore, under another rule, or modification of the rule aforesaid, there can be no implied warranty. I cannot agree with counsel in this contention. I think this was an executory contract.

In 11 Ohio St., page 55, in the opinion of the court, is this statement: "The contract sued upon was executory in its character. It was for the making and delivery to the plaintiffs, at a future day, of three steam boilers, to be used in running the engines of their rolling mill. It must be clear that the rule of

*caveat emptor* can apply in no such case, whether the contract be made with a manufacturer, or other person, for the purchaser can exercise no judgment in regard to the quality of a thing not *in esse,* or which is indeterminate, and thereafter selected or procured by the exercise of the vendor's sole judgment, discretion and will. Any rule must be unreasonable which would impute to a purchaser an intention to rely on his own judgment as to the quality of an article, where the circumstances of the case render it simply impossible for him to exercise any judgment whatever.

"This is, perhaps, not the case of an article agreed to be furnished for a special purpose. It does not appear that the plaintiffs' mills required boilers of a peculiar quality, and that this was known to the defendants. But they did know that the boilers were intended to be used for the purpose to which they are ordinarily applied; that is, to the generation of steam, to be used as a motive power; and they contract to build them with reference to their usual purpose and use. Whether they were large enough to generate sufficient power for the use of the plaintiffs' mills, at Ironton, was a question upon which the plaintiffs might judge for themselves."

Now, these bottles were manufactured by the plaintiff; the purchaser ordered them; they were to be sent from the East somewhere; they were not ordered for any unusual purpose; they were to be used for the accomplishment of what these bottles are manufactured to accomplish. Under the circumstances disclosed in this case, the purchaser must have relied upon the judgment and good faith of the seller in regard to the quality of these articles; and so, I am very clearly of the opinion that this case falls within the rule that there is an implied warranty that the article will be fit for the purpose for which it was both sold and purchased; that this contract was executory. I think there was no error in the charge in that regard. This is the only matter to which my attention has been called, in regard to the charge. I think the verdict was fairly warranted by the evidence, under the charge as given, and the motion for a new trial is overruled.

*White, Johnson, McCaslin & Cannon,* for Plaintiff.

*Hart, Canfield & Callaghan,* for Defendant.